## MENTE & CO. et al. v. OLD RIVER CO.

(District Court, S. D. Texas, at Houston. August 5, 1924.)

No. 1045.

**1. Bankruptcy ⟝57—Corrupt motive not essential to fraudulent transfer of property.**

It is not necessary that actual fraud, in the sense of a corrupt motive to profit those who are acting, be shown to render a transfer of property to one creditor an act of bankruptcy, under Bankruptcy Act, § 3a, subd. 1 (Comp. St. § 9587), but it is sufficient if the effect of the transfer is to give the one creditor such an unreasonable advantage over others that no reasonable explanation appears other than actual or constructive fraud.

**2. Bankruptcy ⟝57—Transfer to creditor of property in excess of debt not necessarily fraudulent.**

Transfer to a creditor of property of value in excess of the debt is not necessarily fraudulent and an act of bankruptcy under Bankruptcy Act, § 3a, subd. 1 (Comp. St. § 9587).

**3. Bankruptcy ⟝57—Transfer of property by corporation to a creditor held not an act of bankruptcy.**

Transfer by a corporation of practically all of its property to a mortgagee in satisfaction of the debt held not fraudulent, and an act of bankruptcy, under Bankruptcy Act, § 3a, subd. 1 (Comp. St. § 9587), where the value of the property was little, if any, above the amount of the debt, and if sold under foreclosure, which was threatened, it probably would not have realized that amount, and where the directors who authorized the transfer were themselves unsecured creditors of the corporation.

In Bankruptcy. Involuntary petition in bankruptcy by Mente & Co. and others against the Old River Company. Petition dismissed.

Roodman Cosby, St. John Garwood, and Baker, Botts, Parker & Garwood, all of Houston, Tex., for petitioners.

Morris, Sewall & Morris, of Houston, Tex., for respondents.

HUTCHESON, District Judge. This is a petition in bankruptcy, brought upon the allegation that the defendant, Old River Company, conveyed and transferred its

property to the Kirby Petroleum Company with intent to hinder, delay, or defraud its creditors. The evidence on the facts is without dispute; the evidence of opinion presents widely variant views.

The evidence on the facts is that this company, a canal company, which had been for many years engaged in planting rice, which had had some very prosperous years, but which for the last three years of its existence had had one failure after another, until its losses reached the staggering total of $400,000, placed a mortgage upon practically its entire property in favor of the Kirby Petroleum Company, in the principal sum of $———; that it defaulted on its interest, which for a year had gone unpaid, and that after many demands for payment, and expressions of determination to foreclose, it was arranged that the Old River Company, in satisfaction of the mortgage debt, which at that time, with interest and attorney's fees, amounted to $———, should convey to the Kirby Petroleum Company the property covered by the mortgage, which was substantially the entire property of the company.

There was the evidence of Mr. Kittrell, a former director of the company, that in his opinion the assets of the company · were worth in excess of $750,000. There was testimony of others that they were worth no more than the amount of the debt. The officers of the company, who on the stand testified that ·the value of the property at the time of the transfer was not more than the amount of the debt, were confronted with statements issued by them prior to the transfer, showing assets in excess of $1,000,000, and, unless conditions have arisen since the giving out of the statements which change the basis of the opinions, the opinions of these officers are undoubtedly of little value, and furnish little guide to go by.

It is clear that the company, having suffered such tremendous losses during the past three years as put it out of active operation, and being in December, 1923, under the hammer of the mortgage in the congealing state of a moribund, if not entirely dead, estate, its value had shrunk tremendously during the three years of adverse times. I am of the opinion, however, that the changes in condition between the times of the statements issued by one of the officers and the transfer under the mortgage did not justify such a difference in valuation, and that the values given in these statements were recklessly and unwarrantably, if not fraudulently, stated; and I am further of the opinion that the views of the officers as to the values at the time of the transfer to the Kirby Petroleum Company coincided nearly with the facts of value, and that the statements made to the agencies did not represent their real views, but were gross and inexcusable misstatements.

Mr. Kittrell's testimony was to the effect that, as a director, he knew there was no value for the stockholders unless oil might be discovered, but that he did think there was an equity for the unsecured creditors, and that he had opposed the transfer of the property for these reasons. There was testimony that the officers of the Kirby Petroleum Company had stated to one of the unsecured creditors that, if they could receive their debt, they would be glad to release the property.

In my opinion, the property, if it had been in free hands, which were not forced by the pressure of an overdue mortgage of enormous size, would have been, in December, 1923, worth more than the mortgage. Just how much I cannot say with accuracy, as value is entirely a question of opinion, and value, where it is connected with a plant, is so largely dependent upon the going qualities of that plant. Taking the land as acreage, apart from its value incident to an operating rice canal, it is my opinion that the value placed by some of the witnesses of $25 an acre is ample, if not too high. It is very difficult to state what value the plant, in its present condition, adds to the land. From some aspects it might become a white elephant. If one bought the lands, and the plant, with the necessity to operate at a heavy loss, the existence of the plant would be a detriment, rather than a benefit.

However that may be, I am of the opinion that, taking it as it stands, it did not have a value in bulk, which is the way, because of the mortgage, it must be treated, of much more than the mortgage, and in the light of the broken state of the property, the pressing character and overwhelming size of the debt, the property could not be said to have any value greatly in excess of the debt.

[1] I do not agree with the contention of the defendant that actual fraud, in the sense of a gross and corrupt motive to profit those who are acting, must be shown in order to justify adjudication. I think it sufficient if the effect of the transfer is to give one creditor such an unreasonable advantage over the others as that no reasonable explanation appears other than actual or constructive fraud.

[2] On the other hand, I do not agree

with the contention of the plaintiffs that it is sufficient to show that more property was transferred than the debt amounted to. I think the true rule is that there must be fraud, actual or constructive. This fraud must be deduced from a motive to oppress some of the creditors in favor of others, or to advantage the transferror, or from some facts which furnish the basis for a finding of corrupt motive, or, a corrupt motive being absent, the act must be so egregious, must appear so unnecessary for a reasonable man to perform, unless he intends to defraud, as that from the act no reasonable inference, except intent to deceive, can be drawn.

[3] In this case I think it clear that no actual fraud was intended. I think it further clear that the parties to the transaction believed that what they were doing was the only reasonable and correct way to dispose of the transaction; that they felt sure that if the property was put up at foreclosure it could not bring the debt, and that it was an unreasonable and an ungracious thing to compel a creditor to go through the expense and trouble of a sale, when the property, which they had represented to him was of good value in order to get his loan, was not, in the opinion of all parties concerned, substantially above that value, and certainly would not at a sale bring more than the mortgage.

Counsel for the petitioner denies that the fact of the mortgage and its threatened foreclosure can be taken into consideration in determining whether the transfer was or was not fraudulent within the statute. They say that the value of the property in free hands is the controlling question. With this position I do not agree. As I have tried to indicate above, the question in its last analysis is one of intent, this intent to be either directly proven or inferred from the facts. How can it be said that persons knowing that their property was about to be sold under a mortgage which they could not possibly protect it from, who took the shortest and best way out by transferring the property without a dollar of return to themselves, they themselves being unsecured creditors of the company, were guilty of an act of fraud? Certainly I cannot say it, nor do I believe that the small margin between the value of this incumbered property in a free state and its mortgage, is sufficient to justify any court in holding, under these facts, that the transfer was other than bona fide, or that any element of intent to defraud was present in it.

The petition for bankruptcy will therefore be denied.